NOTE — Reported at 395 N.E.2d 808.

WAYMON D. DENTON, RUSSELL C. MUSGROVE, THOMAS G. FETTERHOFF, LOUIS E. MATHES *v.* STATE OF INDIANA.

[No. 2-378A76. Filed October 18, 1979. Rehearing granted December 26, 1979. Transfer denied March 12, 1980.]

---

2.   *Modisett v. Jolly,* (1972) 153 Ind.App. 173, 286 N.E.2d 675.

*Don G. Blackmond,* of South Bend, for appellants.

*Theodore L. Sendak,* Attorney General, *Alembert W. Brayton,* Deputy Attorney General, for appellee.

SULLIVAN, J.—In September of 1977, defendants Denton, Musgrove, Fetterhoff, and Mathes were convicted of operating vehicles which exceeded the weight limitations set out in IC 9-8-1-12 (Burns Code Ed. 1973). Subsequently, they were sentenced pursuant to IC 9-8-1-13 (Burns Code Ed. 1973). The four cases were consolidated for the purposes of appeal and involve two issues:

1.  whether the IC 9-8-1-13 provides for excessive fines contrary to article 1, section 16 of the Indiana Constitution and,

2.  whether a sufficient foundation was established for the admission of evidence as to the aggregated axle weights of the vehicles.

We affirm.

## I.

Defendants argue that the penalty provision of IC 9-8-1-13 is unconstitutional. The pertinent part of the statute reads:

"[O]n conviction each such person . . . shall be fined as follows:

. . . .
(6)  If the total of all excesses of weight under one or more  .
of the limitations of IC 1971, 9-8-1-12 is 5,000 pounds or
more, ten cents [10¢] a pound for each pound over 1,000
pounds of excess weight.

. . . .
. . . Parties fined by the court must pay the fine within thirty
days." IC 9-8-1-13(6) (Burns Code Ed. 1973).

The defendants urge that when the penalty provision is read in conjunction with IC 35-4.1-4-1-16 (Burns Code Ed. 1975) an excessive fine results.[1] The latter statute provides that if a convicted person is not indigent but refuses or fails to pay his fine, the court may incarcerate that person and credit his prison time toward the payment of the fine at a rate of five dollars per day.

The defendants do not clearly demonstrate standing to raise this issue. The record is devoid of any evidence that the defendants intend to refuse to pay their fines. Nonetheless, we feel the issue is significant and merits consideration.

Defendants contend that in order to pay off their fines, the required imprisonment would range from 51 to 509 days. Such extended incarceration, they argue, clearly demonstrates the excessive nature of the penalty. The constitutional prohibition against cruel and unusual punishment proscribes atrocious obsolete punishments and is aimed at the kind and form of punishment rather than the duration and amount. *Hollars v. State* (1972) 159 Ind. 229, 286 N.E.2d 166; *Clifton v. State* (1978) 176 Ind.App. 395, 375 N.E.2d 1126. We do not find the punishment to be so grossly excessive as to render it unconstitutional.

As additional support for their argument, defendants compare the instant offense to that of driving while intoxicated which calls for a maximum fine of $500 and imprisonment of up to six months. Defendants' argument is cogent and appealing but does not comport with the applicable case law. The comparative offense rationale

---

1.  Repealed by Acts 1977, P.L. 340, § 148.

was rejected in *Rector v. State* (1976) 264 Ind. 78, 339 N.E.2d 551. There the court held that the legislature is free to establish penalties that are not proportionate to one another so long as the crimes are not lesser included offenses. Certainly, lesser included offenses are not at issue here. Hence, the disparity between them is not prohibited by article 1, section 16, of the Indiana Constitution.

The problem of imprisonment to satisfy fines was addressed in *Williams v. Illinois* (1970) 399 U.S. 235. There the United States Supreme Court held that a pauper's prison sentence, imposed to discharge a fine, which exceeded the maximum punishment for the crime, violated equal protection. Our state Attorney General discussed the application of the *Williams* case to Indiana. He explained:

"It should be pointed out quite emphatically however, what the case of Williams v. State does *not* hold.

This case does *not* affect the State's right to do the following:

1.   Imprisonment for *willful* refusal to pay the fine or court costs, as distinguished from pauperism, which prevents one from paying such fine or court costs." (1970 O.A.G. 46.)

We find IC 9-8-1-13 not unconstitutional.

## II.

Next, the defendants urge that evidence about the vehicles' weights was admitted without proper foundation. The weights were obtained by the use of portable scales (also known as loadometers).

The weighing was done by Patrolman Heimann who testified that he was assigned to the motor carrier division of the Indiana State Police and was trained in the use of the scales. Furthermore, IC 9-8-1-17 (Burns Code Ed. Supp. 1975) specifically authorizes policemen to stop, measure and weigh vehicles. The first requirement was adequately satisfied.

As to the equipment itself, the record is replete with expert testimony about the inspection and certification of the portable scales used by Officer Heimann. Metrologist Jeffers stated that he checked and certified the scales for accuracy March 21, 1977. The arrests occurred April 4, 1977. The testing was corroborated by two other witnesses:   Paul Seitz

and Ralph Finney. There was, then, sufficient evidence regarding the precision of the equipment.

Finally, a proper foundation must establish that the operator used approved techniques. The crux of defendants' argument is that there was no evidence that the portable scale method is an accepted procedure or an accurate way of obtaining gross weight. Defendants point out that the portable scales showed a disparity of weight from one side of each truck to the other. This fact alone, they contend, shows the absurdity of such a weighing technique. The problem of accurate weighing of large vehicles is undeniably complex and involves many intricate principles of physics. At least one other jurisdiction has confronted and approved the use of portable scales:

> "The officer described, in explicit detail, the weighing procedure which was followed in this case, and there is nothing in the record to suggest that the procedure was incorrect. While counsel urged that such an inference can be drawn because the total axle weight of one side of the vehicle was 2,000 pounds in excess of the other side, the side-to-side weight differential is readily attributable to the liquid cargo shifting because of a slight beveling of the road surface, where the weighing took place. Certainly the differential obtained does not give rise to a reasonable inference that the scales were incorrect or that the weighing procedure was improper. Loadometers are in widespread use by law enforcement agencies throughout the country, and they are a relatively simple but accurate means of determining vehicle or axle weights without seriously delaying commercial traffic. Loadometer readings have been accepted as satisfactory evidence in other jurisdictions to support convictions for vehicle weight violations (see, e.g., People v. Vinciguerra, 24 Misc.2d 63, 203 N.Y.S.2d 953 (Sup.Ct.1960)). . . ." *State v. Horn* (1971) 117 N.J. Super. 72, 283 A.2d 561, *modified on other grounds*, 293 A.2d 676 (1972).

Additional support for the use of portable scales comes from the Indiana statute itself. I.C. 9-8-1-17 entitled "Size and Weight," section 17 deals with enforcement of the rules governing truck weight. It begins:

> "Any peace officer having reason to believe that any vehicle herein described or the load thereon is unlawful is authorized to stop, measure and weigh the same on any public highway by means of *portable or* stationary scales . . . ." (Emphasis added.)

However, defendants challenge the use of portable scales because it is directly contrary to the mandate of Indiana Rules and Regulations (24-6-3-2)-1, (24-6-3-2)-2, and (24-6-3-13)-1(e)[2]. Interpretation of these regulations must begin with a close reading of IC 24-6-3-2 (Burns Code Ed. 1974), enacted in 1925 and entitled "Inspectors," which is the enabling statute for the aforementioned regulations. Even a cursory reading of the sections of chapter 3 reveals that the chapter was intended to deal with the weighing of commodities. For example, section 2 states: "The state *food and drug* commissioner shall be the state commissioner of weights and measures." (Emphasis added.) In addition, the title of Acts 1925, chapter 86 reads:

"An act concerning scales, weights, measures, balances and weighing devices and prescribing the standards therefor, prescribing the rights, powers and duties of the state commissioner of weights and measures, providing for the appointment, qualifications, removal, compensation and duties of county and city inspectors of weights and measures, providing how certain commodities shall be sold, providing for the appointment of weighmasters, prohibiting the sale or offering for sale of articles below standard

---

2. (24-6-3-2)-1: "Approval of vehicle scales — Requirements. — Official approval of a vehicle scale extends exclusively to the use of that scale in weighing loads whose entire wheelbase can be accomodated on the scale platform at one time."

(24-6-3-2)-2: "Weighing of vehicles — Restrictions. — All weighing of vehicles shall be made with no person in or on the vehicle or on the scale platform."

(24-6-3-13)-1(e): "No certificate of weight shall be issued by a State weighmaster under any one or more of the following conditions:

I. When the scale at his disposal has not been officially approved by the director of the State Division of Weights and Measures or one of his assistants, deputies or inspectors at the last previous official examination within a period of 12 months preceding the date of weighing.

II. When the total length of the wheelbase of the vehicle to be weighed exceeds the length of the platform of the scale at the weighmaster's disposal.

III. When the weight of the gross load exceeds the nominal weight capacity of the scale at the weighmaster's disposal.

IV. When a vehicle is to be weighed, either empty or loaded, and any person is in or on the vehicle or on the scale platform at the time of weighing.

V. When the loaded or unloaded vehicle weighs less than 1,000 pounds and the scale at the weighmaster's disposal is a vehicle scale."

weight or measure and providing penalties for the violation thereof."

Furthermore, section 13, which defines the appointment and duties of weighmasters, again focuses on commodities. In pertinent part it reads: "Any weighmaster who misrepresents the quantity of commodities weighed or measured by him, or otherwise misconducts himself in the execution of his duties of weighmaster shall be guilty of a misdemeanor . . . ."

Earlier this year, the Third District similarly concluded that the thrust of the statutory weights and measures provisions are directed principally to trade and consumer laws. *Widner v. State* (1979) 181 Ind.App. 427, 391 N.E.2d 1199.

Even if one were to disregard the legislative intent of I.C. 24-6-3-2, any apparent conflicts between I.C. 24-6-3-2 and IC 9-8-1-17 are resolved by applying settled rules of statutory construction. First, if one statute addresses a subject in general terms and another addresses the subject more specifically, the specific statute should control. *Indiana Waste Systems, Inc. v. Board of Commissioners of the County of Howard* (1979) 180 Ind.App. 385, 389 N.E.2d 52. Here, the general statute deals with weights and measures while the more specific statute governs the weighing of trucks. Secondly, the latter of two statutes pertaining to the same subject area prevails when there is conflict. *Id.* The motor vehicle provisions were enacted in 1931 and thus prevail over any contradictory provisions of the weights and measures legislation created in 1925.

While the defendants impugn the portable scale technique, they have presented no evidence or argument to support their misgivings. We believe it incumbent upon them to present some data or authority if they wish to curb such an established technique. Accordingly, we hold that the trial court committed no error in allowing testimony as to the aggregate weights obtained by the portable scales.

Judgment affirmed.

Buchanan, C.J. and Shields, J., concur.

NOTE—Reported at 395 N.E.2d 812.

## OPINION ON PETITION FOR REHEARING

SULLIVAN, J.—This court on October 18, 1979 affirmed convictions against the appellants for operating vehicles in excess of the statutory weight limitations. 395 N.E.2d 812. Appellants now petition for a rehearing. We grant that petition in order to address two of the contentions raised therein and to dispel any misconceptions about our earlier opinion. The two contentions are as follows:

1.  That our opinion effectively shifted the burden of proof from the State to the defendants to show the accuracy or inaccuracy of the portable scale weighing techniques, and

2.  that the term "portable scales" as used in I.C. 9-8-1-17 (Burns Code Ed. 1973) means a scale other than a platform scale.

### I.

The requirement that the State carry the burden of proof in a criminal prosecution is so firmly established as to obviate any need for citation. It is equally settled, however, that once the State has presented a prima facie case of guilt, the defendant must come forward with evidence sufficient to revive a reasonable doubt in the mind of the trier of fact. *Smith v. State* (1971) 255 Ind. 687, 266 N.E.2d 216. In *Smith*, the defendant was convicted of rape. He argued that his intoxicated state precluded him from having the requisite intent. The court affirmed the conviction because even in the face of the rebuttal evidence adduced by the defendant, i.e., his bare declaration of inebriation, there was evidence of probative value from which the trial court could reasonably infer that the defendant was guilty beyond a reasonable doubt.

There is no definitive authority on the allocation of burdens of proof in scientific and mechanical measurements:

> "As far as decisions directly touching the question to be annotated are concerned, an almost tomb-like silence is to be found on whether there is any presumption, or where the burden of proof lies, as to the accuracy of scientific and mechanical instruments used to measure speed, temperature, time, and the like." 21 A.L.R.2d 1200.

The A.L.R. annotation, *supra*, discusses a problem analogous to the use of scales; that is, the use of radar and speedometers to measure vehicular

speed. It is generally acknowledged that the State must prove that devices used to determine speed are accurate. In order to establish a prima facie case of guilt, the State must show that the apparatus was properly set up and regularly tested. *See, e.g., People v. Burch* (1974) 19 Ill.App.3d 360, 311 N.E.2d 410, *State v. Simon* (Iowa 1976) 243 N.W.2d 571, *Carrier v. Commonwealth* (Ky. 1951) 242 S.W.2d 633, *Farmer v. Commonwealth* (1964) 205 Va. 609, 139 S.E.2d 40. Thus in *Burch, supra*, the court stated:

> "The record here indicates that the arresting officer tested his radar apparatus before and after its use in apprehending the defendant by utilizing an electronic plug-in device. We are of the opinion that this was sufficient proof of the accuracy of the radar unit and of its proper operation for the trial court to have found the defendant guilty of speeding upon the reading taken from that unit." 19 Ill.App.3d 363, 311 N.E.2d 413.

Once the State has proven excessive speed, at least one jurisdiction has openly acknowledged a shift in the burden of producing evidence. The Virginia court explained that after measurements obtained by radar are presented by the State, the burden of going forward with the evidence shifts to the defendant. This neither shifts the ultimate burden of persuasion nor does it deprive the defendant of the presumption of innocence. *Dooley v. Commonwealth* (1956) 198 Va. 32, 35-36, 92 S.E.2d 348, 350, *appeal dismissed*, 354 U.S. 915.

By analogy, in a weight violation case, the State must prove that the scales were tested before and after their use. The State in the instant case did so. The burden of producing evidence then shifted to the defendants. The defendants presented no evidence. Thus we reaffirm the statement made in our original opinion:   "While the defendants impugn the portable scale technique, they have presented no evidence or argument to support their misgivings. We believe it incumbent upon them to present some data or authority if they wish to curb such an established technique." 395 N.E.2d at 816.

II.

Finally, appellants argue that the term "portable scales" does not sanction the use of multiple scales which weigh less than all axles simultaneously. Appellants assert, "A 'portable scale' must necessarily

mean a platform scale. . . ." Their references to Indiana Rules and Regulations (24-6-3-2)-1, (24-6-3-2)-2, and (24-6-3-13)-1(e) are as unpersuasive now as when we first considered this appeal. Those provisions are directed to trade and consumer laws, not truck weight violations. We also remind appellants of a basic tenet of statutory construction. Words and phrases should be given their plain, ordinary and usual meaning. *State v. Turner* (1979) Ind.App., 386 N.E.2d 208. The relevant statute reads:

"Any peace officer having reason to believe that any vehicle herein described or the load thereon is unlawful is authorized to stop, measure and weigh the same on any public highway by means of *portable or* stationary scales . . . ." (Emphasis added.) IC 9-8-1-17 (Burns Code Ed. 1973)

We fail to see any ambiguity in the words "portable scales" nor do we find any clearly expressed legislative intent to bar any particular type of portable scale. Had the legislature intended to sanction only platform scales for use by the police, it surely would have said so.

Accordingly, our decision of October 18, 1979 is hereby reaffirmed.

Buchanan, C.J. and Shields, J., concur.

NOTE—Reported at 398 N.E.2d 1288.