**Mikel L. SMITH, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee.**

**No. 09A02–8601–CR–38.**

Court of Appeals of Indiana, Second District.

Dec. 31, 1986.
Rehearing Denied Jan. 30, 1987.

---

Kelly Leeman, Kelly Leeman & Associates, Logansport, for appellant.

Linley E. Pearson, Atty. Gen. Jay Rodia, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Mikel Smith (Smith) appeals from his conviction of driving while intoxicated, a class A misdemeanor.

We affirm.

The evidence most favorable to the judgment shows that on the evening of May 23, 1985, Smith was riding his motorcycle toward Logansport. Indiana State Police Trooper David Patty (Patty) stopped Smith after receiving a reading of seventy-four miles per hour on his radar unit when Smith drove by. Patty asked Smith to be

seated in his patrol car, whereupon Patty noticed the odor of alcohol. Patty drove Smith to Logansport where a breathalyzer test was administered to Smith. The test result showed a blood alcohol content of .12 percent. Patty then informed Smith that he was under arrest for driving while intoxicated and asked him to perform several field sobriety tests. Smith failed to exhibit normal balance or control in performing the tests.

On appeal, Smith presents the following issues for our consideration:

(1) Whether failure to establish a proper foundation for admission of the radar reading tainted the probable cause for his arrest and whether it denied him a right of confrontation and cross-examination;

(2) Whether the trial court erred in admitting the breathalyzer test results when the only evidence of the test operator's certification was a card stating that the operator was a valid chemical test operator;

(3) Whether the breathalyzer test results should not have been admitted because they did not reflect Smith's level of intoxication at the time of the alleged offense.

Smith argues that there was no evidence that his initial stop and detention were based upon probable cause. Therefore, it was illegal and any evidence subsequently obtained was tainted and inadmissible. Without this tainted evidence, Smith argues, there is no evidence supporting his conviction.

Smith's entire argument on this issue is premised upon the failure of the State to lay a proper foundation for the admission of Officer Patty's radar reading. The sole reason given by Officer Patty for stopping Smith was that Patty's radar unit registered seventy-four miles an hour when Smith drove by.

The State agrees that an improper foundation was laid for the admission of the radar reading. However, the State contends that the radar reading was merely cumulative of other evidence and that Smith has waived the issue. It is clear that the State made no effort to demonstrate the reliability and accuracy of the radar device used to measure Smith's speed, nor did the State show that Officer Patty followed proper procedures in operating the device.

Generally, before the results of scientific tests are admissible, the burden is upon the State to prove the reliability of the test, not on the defendant to prove unreliability. *See Boothe v. State* (1982) 4th Dist.Ind.App., 439 N.E.2d 708, 713. Thus, before such evidence may be admitted, the proponent of the evidence must lay a proper foundation establishing the reliability of the procedure used. *See Saliba v. State* (1985) 2d Dist.Ind.App., 475 N.E.2d 1181 (Proponent of public opinion poll must establish certain foundational requirements prior to admission of poll results); *Oller v. State* (1984) 3d Dist.Ind.App., 469 N.E.2d 1227, *reh. denied* 472 N.E.2d 610 (In order for results of breathalyzer test to be admissible, foundational elements must be established); *Denton v. State* (1979) 2d Dist., 182 Ind.App. 464, 395 N.E.2d 812, *on reh.* 398 N.E.2d 1288 (Before evidence of weight of vehicle is admissible, foundation must be laid as to accuracy of scales used, training of patrolman, and use of approved techniques).

The question whether radar test results are subject to foundational requirements before being admitted as evidence has never been directly addressed by the courts of this state. However, upon rehearing in *Denton v. State, supra,* 398 N.E.2d 1288, we analogized the use of scales in a weight violation case (the specific issue presented in *Denton* ) to the use of speedometers and radar in a speeding case. We cited numerous outside authorities and observed that, "[i]t is generally acknowledged that the State must prove that devices used to determine speed are accurate. In order to establish a prima facie case of guilt, the State must show that the apparatus was properly set up and regularly tested." *Denton v. State, supra,* 398 N.E.2d at 1289.

■ The requirement of foundational elements prior to the admission of evidence obtained by radar is reasonable and consistent with the precedent established by other jurisdictions which have addressed the question, as well as the precedent established by Indiana courts considering analogous questions. Accordingly, we hold that before the results of a radar test may be admitted, the State must demonstrate that the radar device was properly operated and regularly tested. We recognize that our holding places an additional burden upon the State in prosecuting persons accused of speeding. However, the burden imposed is not heavy, nor is it unreasonable given the possibility of error in the operation of radar devices.[1]

Our holding that foundational elements must be established before radar readings may be admissible does not require a reversal in this case, even though no proper foundation for the admission of the radar readings was laid in the trial court. Smith was convicted of driving while intoxicated, not speeding. His argument is that the improperly admitted evidence regarding his speed was necessary to establish probable cause for his initial stop and detention. Without this evidence of probable cause, Smith argues, the evidence necessary to support his conviction for driving while intoxicated was inadmissible.

■ Smith's argument would have merit if he had properly preserved it in the trial court. While the record shows that Smith vigorously objected to the admission of the radar reading, the record also indicates that he made no objections based upon the State's failure to establish probable cause to the admission of evidence obtained as a result of the radar stop. Smith did object to the intoxication evidence, but his objections were not based upon the State's failure to establish probable cause. A party may not object to the admission of evidence on one basis at trial and on a different basis on appeal. *Golden v. State*

(1985) Ind., 485 N.E.2d 51. Smith cannot now argue that the evidence supporting his conviction was admitted without the requisite showing of probable cause when he did not object on that basis.

■ Smith also argues that the trial court's admission of the radar reading without a proper foundation deprived him of his constitutional rights of cross-examination and confrontation. This argument is without merit. The court expressly advised Smith that he was entitled to cross-examine Officer Patty regarding his operation of the radar device and the reliability of the device. While the trial court's action improperly shifted the burden of establishing the reliability or unreliability of the radar device to Smith, the error did not deprive Smith of any constitutional guarantees.

■ Smith next argues that the trial court erred in admitting the results of the breathalyzer test. He first contends that the state did not adequately prove that Officer Patty was a certified breathalyzer operator. Indiana Code 9–11–4–5(c) (Burns Code Ed.Supp.1986) provides that certified copies of certificates issued by the Department of Toxicology of the Indiana University School of Medicine constitute prima facie evidence of the operator's certification. In this case, the State attempted to establish Officer Patty's status as a certified operator by introducing a card carried by Patty which stated that Patty was a valid chemical test operator. Smith argues that this was insufficient.

The identical issue was before the First District of this court in *Grogan v. State* (1985) 1st Dist.Ind.App., 482 N.E.2d 300. The State had used the same type card as was used in this case to establish an officer's certification.

"Grogan argues that this is an improper method of establishing the operator's certification. He contends that because admission of the certification itself from

1. *See,* Note, *Radar Speed Detection: Homing in on New Evidentiary Problems,* 48 Fordham L.Rev. 1138 (1980).

the Department of Toxicology is the method set out in Ind. Code § 9–11–4–5(c)(3) proof of certification by any other means is improper. However, we do not read this section as excluding all other methods of proof. The controlling language of the statute is in subsection (d) which regulates the ultimate question of the admissibility of the breathalyzer test results. Ind. Code § 9–11–4–5(d)(1) simply requires that the test operator be certified. This foundational requirement was met through the admission of Officer Summers' red card." *Id.* at 305.

We do not disagree with the First District's resolution of this question.[2] The trial court did not err in admitting Officer Patty's card as evidence of his certification. Absent evidence to the contrary it was sufficient foundation for purposes of admissibility of the test results.

■■■■ Finally, Smith argues that the breathalyzer test results should not have been admitted because they did not reflect his level of intoxication at the time of the alleged offense. Smith's argument is, in effect, a challenge to the relevance of test results obtained some time after the alleged offense to the defendant's level of intoxication at the time of the offense. Generally, evidence is admissible in criminal proceedings if it is relevant to the issue being tried. *Simpson v. State* (1978) 269 Ind. 495, 381 N.E.2d 1229. Relevancy is the logical tendency of evidence to prove a material fact. *Coburn v. State* (1984) 2d Dist.Ind.App., 461 N.E.2d 1154. Evidence tending to prove a material fact is admissible even though its tendency to prove the material fact may be slight. *Moore v. State* (1985) Ind., 485 N.E.2d 62. In this case, the statute under which Smith was convicted provides that, "A person who operates a vehicle while intoxicated commits a class A misdemeanor." I.C. 9–11–2–2 (Burns Code Ed.Supp.1986). Thus, the ultimate question was Smith's intoxication and the material facts were those facts which would facilitate the resolution of that question. The fact that Smith consumed alcohol sometime prior to his arrest is material. Thus, evidence which tended to prove the material fact of Smith's consumption of alcohol was admissible. Evidence that Smith's blood alcohol content measured .12 percent shortly after his arrest does tend to prove that at some time prior to his arrest, Smith had consumed some quantity of alcohol which might have resulted in intoxication. This is not to say that the evidence directly supported a conclusion that Smith was intoxicated. Rather, the evidence was simply a link in the chain of evidence which might lead reasonably to that conclusion. The evidence was properly admitted.[3]

Despite our holding with respect to the admissibility of the test results, it is appropriate to emphasize the limited purposes for which such evidence may be used. Our holding that blood alcohol test results obtained some time after the alleged violation are admissible should not be confused with a holding that such test results are of themselves sufficient to support a conviction under I.C. 9–11–2–2. Although I.C. 9–11–1–7 provides that a blood alcohol content of .10 percent at the time of the offense constitutes " '[p]rima facie evidence of intoxication,' " this court has held that the provision does not allow the State to gain a conviction of driving while intoxicated simply by demonstrating that the defendant was driving with a blood alcohol content of .10 percent or above. *Warner v. State* (1986) 2d Dist.Ind.App., 497 N.E.2d 259; *Sering v. State* (1986) 2d Dist.Ind. App., 488 N.E.2d 369.[4] The State must

---

**2.** Neither the *Grogan* case nor the case before us involves any contention that the card is subject to a hearsay objection.

**3.** Evidence of an individual's blood alcohol content *at the time of the offense* is always admissible in proceedings under I.C. 9–11–2. I.C. 9–11–4–15 (Burns Code Ed.Supp.1986). However, the only evidence presented by the State in this case

was evidence of Smith's blood alcohol content at the time of the test.

**4.** The *Warner* and *Sering* cases take different approaches to reach the same conclusion. In *Warner,* Chief Judge Buchanan, speaking for the District, reasoned that to allow the State to establish guilt of driving while intoxicated simply by proving a blood alcohol content of .10

prove impairment in order to support a conviction of driving while intoxicated. *Warner, supra; Sering, supra.*

 In the case before us, the State did not prove that Smith had a blood alcohol content of .10 percent *at the time of the offense.* The test results admitted showed Smith's blood alcohol content at the time of the test, but the State presented no evidence relating this figure back to the time of the offense. In order to show blood alcohol content at the time of the offense, the State must present evidence extrapolating back from the time of the test. However, in a prosecution for driving while intoxicated under I.C. 9–11–2–2, it is not necessary to show blood alcohol content at the time of the offense so long as there is sufficient evidence of *intoxication* at the time of the offense.[5] Intoxication is defined by statute as being under the influence of:

"(1) Alcohol;

(2) A controlled substance;

(3) Any drug other than alcohol or a controlled substance; or

(4) Any combination of alcohol, controlled substances, or drugs;

such that there is an impaired condition of thought and action and the loss of

normal control of a person's faculties to such an extent as to endanger any person." I.C. 9–11–1–5 (Burns Code Ed. Supp.1986).

Thus, the State needed to prove that Smith's driving ability was impaired. *See Warner v. State, supra,* 497 N.E.2d 259; *Sering v. State, supra,* 488 N.E.2d 369. In this case there was sufficient evidence from which the trier of fact could reasonably conclude that Smith was intoxicated at the time of the offense. The arresting officer testified as to conduct by Smith at the time of the offense which led the officer to believe that Smith was intoxicated. The results of the field sobriety test administered later supported the officer's initial belief. The results of the blood alcohol test supplied the link between Smith's impaired condition and its cause, i.e., the consumption of alcohol. There was sufficient evidence to support the trial court's conclusion that Smith was intoxicated.

The judgment of the trial court is affirmed.

BUCHANAN, C.J., and SHIELDS, J., concur.

---

percent or above would erase any distinction between the offense of driving while intoxicated, a class A misdemeanor, and driving with a blood alcohol content of .10 percent or above, a class C misdemeanor. The unanimous opinion also observed that such a construction would render the statutory definition of "intoxicated" meaningless by not requiring the State to prove impairment. "We cannot presume that the legislature intended the per se offense and the definition of 'intoxicated' to be meaningless enactments and will not adopt a construction that would cause such a result." *Warner, supra,* 497 N.E.2d at 262.

In *Sering,* the majority concluded that because the phrase "prima facie evidence of intoxication" in I.C. 9–11–1–7 was enclosed in quotation marks, the definition therein only applied to those statutes which contained the phrase, i.e., I.C. 9–11–4–3, I.C. 9–11–2–2 does not contain the phrase "prima facie evidence of intoxication."

**5.** It would be necessary to show the blood alcohol content at the time of the offense by means of extrapolation or test results obtained at the

time of the violation in order to support a conviction under I.C. 9–11–2–1. Indiana Code 9–11–2–1 provides that "A person who operates a vehicle with ten-hundredths percent [.10%], or more, by weight of alcohol in his blood commits a class C misdemeanor." Thus, while the results of a test given some time after the alleged violation are relevant and admissible, a conviction under I.C. 9–11–2–1 must be supported by evidence of the defendant's blood alcohol content while he was operating the vehicle.

Although we are convinced that extrapolation is required by the clear language of the statutes, we are troubled by the fact that the evidence necessary for proper extrapolation will in many cases be solely in the hands of the defendant. "[A]n extrapolation, particularly to a period prior to defendant's 'peak' period, would often be based solely on the defendant's own testimony as to the amount of alcohol ingested, the period of time over which it was ingested and the time of the last consumption of alcohol." *State v. Sutliff* (1976) 97 Idaho 523, 525, 547 P.2d 1128, 1130. Despite our concern, this is not the proper case and we are not the proper body to rectify the statute's deficiencies.