**Amarree H. MEHIDAL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A05–9212–CR–431.**

Court of Appeals of Indiana,
Fifth District.

Nov. 9, 1993.

Anthony V. Luber, South Bend, for appellant-defendant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

RUCKER, Judge.

Amarree H. Mehidal appeals his convictions and sentences for Operating a Vehicle while Intoxicated Resulting in Serious Bodily Injury to Another ("OWI Bodily Injury")[1], and Operating a Vehicle while Intoxicated with a Prior Conviction of Operating a Vehicle while Intoxicated ("OWI with a Prior")[2], both Class D felonies. He raises the following rephrased issues:

1. Did the trial court err in admitting into evidence opinion testimony as to whether Mehidal was intoxicated?

2. Did the trial court err in admitting into evidence testimony concerning the method used in gathering and testing Mehidal's blood sample?

3. Did the trial court err in admitting into evidence the blood serum test results?

4. Did the trial court err in its instructions to the jury?

5. Did the trial court err in sentencing Mehidal for both OWI Bodily Injury and OWI with a Prior?

6. Was Mehidal's sentence manifestly unreasonable?

We affirm in part, reverse in part, and remand.

The evidence most favorable to the trial court's judgment reveals that on February 22, 1993, at approximately 6:45 p.m., Mehidal drove his car through a red light at the intersection of Grape and Edison Roads in Mishawaka, Indiana. Mehidal was traveling fifty-five to sixty miles per hour in a thirty-mile per hour speed zone when he crashed into four other vehicles. Norma Rector, a passenger in one of the cars struck by Mehidal, suffered a fractured pelvis and two broken bones in her right arm. Her husband, Robert, suffered a broken collar bone and a severed spinal cord. Bonnie Munneke and Vickie Cadieux, drivers of two other cars struck by Mehidal,

---

**1.** Ind.Code § 9–30–5–4.

**2.** Ind.Code § 9–30–5–3.

also suffered various injuries. At trial both Munneke and Cadieux testified that Mehidal smelled of alcohol and that in their opinion he was intoxicated.

After police and emergency medical personnel arrived on the scene, Mehidal was transported to the St. Joseph's Medical Center. While enroute, Mehidal was belligerent and shouted profanities to a paramedic attempting to help him. When questioned by the medics as to whether he had consumed any alcohol, Mehidal replied that he had been drinking since 2:00 o'clock that afternoon. After his arrival at the medical center, Mehidal was treated by Dr. George Knowles. At trial Dr. Knowles testified that Mehidal was abusive, belligerent, grossly intoxicated and seriously impaired.

At the request of an investigating officer, Dr. Knowles ordered that a blood alcohol test be performed on a sample of Mehidal's blood. Kathleen Passwater, a laboratory technician, drew a blood sample from Mehidal and analyzed it through the use of an instrument identified as an "A.C.A. Machine." The test revealed a blood serum alcohol content of 310 mg/dl (.310%). Dr. Knowles testified that serum blood alcohol is fifteen to twenty percent higher than whole blood alcohol.

Mehidal was charged with two counts of Operating a Vehicle while Intoxicated Resulting in Serious Bodily Injury to Another (Counts I and II), Operating a Vehicle while Intoxicated (Count III), and Operating a Vehicle while Intoxicated with a Prior Conviction of Operating a Vehicle while Intoxicated (Count IV). In a bifurcated trial, the jury found Mehidal guilty on all counts.

Although the trial court entered judgment on each Count, the court sentenced Mehidal only on Counts I and IV. Mehidal was sentenced to three years for OWI Bodily Injury (Count I), and a consecutive three years for OWI with a Prior (Count IV). This appeal ensued in due course.

### I.

■ Mehidal first contends the trial court erred in admitting into evidence lay witness testimony as to whether he was intoxicated. Mehidal acknowledges that non-expert witnesses are permitted to give their opinion of another's intoxication, *Hicks v. State* (1975), 164 Ind.App. 235, 328 N.E.2d 219, and that the admission of lay opinion rests with the sound discretion of the trial court. *Hedrick v. State* (1982), Ind., 430 N.E.2d 1150, 1155–46. Nonetheless, Mehidal argues that the degree to which a person is under the influence of alcohol so as to constitute intoxication, as the term is used in the traffic codes, is a legal question and not subject to opinion evidence. *Brief of Appellant* at 14. Mehidal's argument is simply another way of saying a non-expert should not be able to testify as to another's intoxication. The law in this area is well settled and Mehidal's argument lacks merit. We find no error here.

### II.

■ Mehidal next complains the trial court erred in admitting into evidence testimony concerning the method used in gathering and testing his blood sample. He alleges the State failed to show compliance with Ind.Code § 9–30–6–6 which provides in relevant part:

(g) A physician or a person trained in obtaining bodily substance samples and acting under the direction of, or under a protocol prepared by, a physician shall obtain a blood, urine, or other bodily substance sample if the following exist:

(1) A law enforcement officer requests that the sample be obtained.

(2) The law enforcement officer has certified in writing the following:

(A) That the officer has probable cause to believe the person from whom the sample is to be obtained has violated IC 9–30–5.

(B) That the person from whom the sample is to be obtained has been transported to a hospital or other medical facility for treatment.

(C) That the person from whom the sample is to be obtained has been involved in a motor vehicle accident that resulted in the serious bodily injury or death of another.

(D) That the accident that caused the serious bodily injury or death of another occurred not more than three (3) hours before the time the sample is requested.

Mehidal contends there was no evidence that a law enforcement officer requested the blood test, no evidence a law enforcement officer made the statutorily proscribed written certifications, no evidence showing Mehidal consented to the blood draw, and no evidence that the technician had the authority to draw blood or administer a blood test. According to Mehidal, the State failed to establish an adequate foundation for any testimony concerning the procedure used in gathering and testing his blood sample. Therefore, Mehidal concludes, the trial court erred in allowing the testimony into evidence.

Mehidal is mistaken. He apparently misperceives the distinction between testimony concerning the gathering and testing of evidence versus the foundational requirement for introducing test results into evidence. In this case Mehidal never objected to the introduction of the test results. Rather, he objected to the testimony of the laboratory technician concerning the procedure she used in gathering and testing the blood sample and converting alcohol content in blood serum to whole blood.

■ There is no question that results of a scientific test may not be properly introduced into evidence absent an adequate foundation. *Smith v. State* (1986), Ind.App., 502 N.E.2d 122, *trans. denied.* However, we are aware of no such foundational requirement for a witness describing the steps taken in gathering and testing the evidence in the first instance. Rather, a witness may testify on any relevant matter about which the witness has personal knowledge. *Buck v. State* (1983), Ind., 453 N.E.2d 993.

In this case the State presented testimony from Kathleen Passwater, a laboratory technician employed by the St. Joseph Medical Center. Passwater testified that she is trained in obtaining bodily substance samples and that she drew a sample of Mehidal's blood. She also testified that she is trained to analyze fluids on the "A.C.A. Machine" and that physicians routinely rely on the test results. Clearly, Passwater was competent to testify to those matters of which she possessed personal and firsthand knowledge. We find no error here.

### III.

Mehidal next argues the trial court erred by permitting the serum blood test results into evidence because "[T]here was no accurate or concise method by which the evidence could be converted to blood alcohol content by weight." *Brief of Appellant* at 20. There are several problems with Mehidal's argument.

■ First, for a conviction under Ind. Code § 9–30–5–1 the State must prove that the defendant operated a vehicle with at least ten-hundredths percent (0.10%) by weight of alcohol in the defendant's blood. Where a serum blood test has been taken of the defendant's blood, the State must present expert testimony concerning conversion of the serum test results into whole blood percentage by weight. *Melton v. State* (1992), Ind.App., 597 N.E.2d 359. *trans. denied.* In the absence of evidence establishing that the defendant was operating a vehicle with .10%, or more, by weight of alcohol in his blood, a conviction under I.C. § 9–30–5–1 cannot be sustained. *Id.*

■ In the case before us Mehidal was neither charged with nor convicted of I.C. § 9–30–5–1. Rather, he was charged with Operating a Vehicle while Intoxicated under I.C. § 9–30–5–2, Operating a Vehicle while Intoxicated with a Prior Conviction of Operating a Vehicle while Intoxicated under I.C. § 9–30–5–3, and Operating a Vehicle while Intoxicated Resulting in Serious Bodily Injury under I.C. § 9–30–5–4. Thus, even if the test results were improperly admitted into evidence any error would be harmless. There was sufficient additional evidence presented to the jury of Mehidal's intoxication at the time he drove his car through a red light crashing into four other vehicles.

Second, Mehidal cites no authority for the proposition that serum blood test results are inadmissible absent expert testimony concerning conversion of the serum test to whole blood percentage by weight. Likewise, our own research reveals no such authority. Rather, where a defendant is charged with operating a vehicle with .10% or more by weight of alcohol in his blood, his or her conviction for that offense may be reversed for a failure of proof if there is no expert testimony concerning the conversion of serum test to whole blood percentage by weight. *See Melton*, 597 N.E.2d at 361.

Third, contrary to Mehidal's assertion, the State in this case presented to the jury expert witness testimony concerning conversion of the serum alcohol to blood alcohol level. The test results on Mehidal's blood sample showed a blood serum alcohol content of 310 mg/dl (.310%). State's witness Dr. George Knowles, the physician who treated Mehidal at the medical center, did not specifically testify to the corresponding blood alcohol content. However he did provide the formula for reaching that figure:

Q. So if you, for example, had a three-one-oh [sic] milligrams over deciliters, what would that convert into blood alcohol content?

A. Whole blood alcohol content?

Q. Whole blood alcohol content.

A. If there was three hundred ten, we would subtract approximately fifteen to twenty percent of that to put it in the range of deviate.

*Record* at 371. While not a model of clarity, this testimony was sufficient for the jury to perform its own calculations in determining Mehidal's BAC, namely: .310% × 20% = .062%, .310% − .062 = .248%. We find no error.

### IV.

Mehidal next challenges the trial court's Final Jury Instruction No. 2 which dictates:

Prima facie evidence of intoxication includes evidence that at the time of an alleged violation, there was at least ten-hundredths percent (.10%), by weight of alcohol in the person's blood. 'Prima facie' means that quantity of evidence necessary to prove a fact.

Prima facie evidence creates an inference that the defendant was sufficiently under the influence of intoxicating liquor to lessen his driving ability within the meaning of the law. This inference is not conclusive, you may reject prima facie evidence whether or not it is rebutted by other evidence.

*Record* at 69. According to Mehidal, there was no evidence to support giving the instruction, it is misleading, and the instruction is not a correct statement of the law. Mehidal's argument lacks merit. First, testimony of the laboratory technician combined with the testimony of the treating physician was sufficient to enable the jury to conclude that Mehidal had a blood alcohol content of at least ten-hundredths percent. Second, the instruction presents a correct statement of the law which we do not find confusing. This court approved a similar instruction in *Shaw v. State* (1992), Ind.App., 595 N.E.2d 743, *reh'g denied.*

Mehidal also complains of the trial court's Final Jury Instruction No. 4 which reads:

You are instructed that if the evidence establishes that:

1) A chemical test was performed on a test sample taken from the person charged with the offense within three (3) hours after operating a motor vehicle; [and]

2) The person charged with the offense had at least ten-hundredths (.10%) by weight of alcohol in the person's blood at the time the test was taken, you the jury *may presume* that the defendant had at least ten-hundredths percent (.10%) by weight of alcohol in the person's blood at the time the person operated the vehicle. However, this presumption is rebuttable.

*Record* at 71 (emphasis added).

Mehidal's challenge is twofold. First he argues there was insufficient evidence to support giving the instruction because the

record does not indicate he had a BAC of .10% or more. As indicated in our analysis of Instruction No. 2, we find otherwise. The evidence supports the giving of Instruction No. 4. Second, Mehidal argues the instruction constitutes error because it impermissibly shifts the burden to him. We disagree.

Instruction No. 4, based on Ind.Code § 9–30–6–15, informs the jury that if Mehidal had a BAC of .10% or more from a sample taken within three hours of operating the vehicle, the jury may presume that he had such a BAC at the time he operated the vehicle. This is a correct statement of the law. Contrary to Mehidal's contention, the rebuttable presumption does not affect the ultimate burden of proof. Rather, the rebuttable presumption shifts to Mehidal the burden of going forward with evidence. *See Chilcutt v. State* (1989), Ind.App., 544 N.E.2d 856, 858, *trans. denied;* 22A C.J.S. Criminal Law § 695 (1989). This court has approved an instruction informing the jury of the same rebuttable presumption in *Regan v. State* (1992), Ind.App., 590 N.E.2d 640. We find no error.

## V.

�as■ Next, Mehidal contends the trial court's sentencing of him on Count I, OWI Bodily Injury, and Count IV, OWI with a Prior, violates his constitutional right against double jeopardy. The State argues the two statutes upon which Mehidal was convicted and sentenced are separate, punishable offenses and Mehidal was properly convicted and sentenced for each offense.

■ A defendant's right not to be put twice in jeopardy for the same offense arises from the Constitution of the United States and the Indiana Constitution.[3] The concept of double jeopardy embraces prohibitions against successive prosecution and multiple punishment for the same offense. *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893. Thus, a person may not be twice punished for a single offense rising

from one set of circumstances. *Hutcherson v. State* (1978), 269 Ind. 331, 380 N.E.2d 1219. However, a person may be convicted and punished for multiple offenses stemming from the same act if the offenses are not identical. *Zachary v. State* (1984), Ind., 469 N.E.2d 744.

The Supreme Court recently announced that where two offenses for which a defendant is tried or punished cannot survive the "same elements" test, the double jeopardy bar applies. *United States v. Dixon* (1993), —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (overruling *Grady v. Corbin* (1990), 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548, which added the "same conduct" test to double jeopardy analysis). The same-elements test, sometimes referred to as the *"Blockburger"* test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offense" and double jeopardy bars additional punishment. *Id.*

Mehidal was convicted under the following statutes:

Ind.Code § 9–30–5–2: A person who operates a vehicle while intoxicated commits a Class A misdemeanor (Count III);

Ind.Code § 9–30–5–4: A person who violates section 1 or 2 [IC 9–30–5–1 or 9–30–5–2] of this chapter commits a Class D felony if the crime results in serious bodily injury to another person (Counts I and II); and,

Ind.Code § 9–30–5–3: A person who violates section 1 or 2 [IC 9–30–5–1 or 9–30–5–2] of this chapter commits a Class D felony if:

(1) The person has a previous conviction of operating while intoxicated; and

(2) The previous conviction of operating while intoxicated occurred within the five (5) years immediately preceding the occurrence of the violation of section 1 or 2 of this chapter (Count IV).

Although the trial court entered convictions upon Counts I through IV, Mehidal

---

**3.** "No person shall be put in jeopardy twice for the same offense." Ind. Const., Art. 1, § 14. The Fifth Amendment to the Constitution of the United States, made applicable to the states by the Fourteenth Amendment, provides, "nor shall any person be subject for the same offense to be twice put in jeopardy...."

was not sentenced on the misdemeanor Operating while Intoxicated (OWI) conviction (Count II) nor for one of the two felony convictions for OWI Resulting in Serious Bodily Injury (Count III). The trial court sentenced Mehidal under Counts I and IV.

The elements of Counts I and IV are the same. The elements of OWI Bodily Injury, Count I in this case, are 1) operating a motor vehicle 2) while intoxicated; the result of serious bodily injury is a fact enhancing the penalty for the crime of OWI. *Kelly v. State* (1988), Ind.App., 527 N.E.2d 1148, *aff'd* (1989), Ind., 539 N.E.2d 25; *Spaulding v. State* (1989), Ind.App., 533 N.E.2d 597, *trans. denied.* Likewise, the elements of OWI with a Prior, Count IV in this case, are 1) operating a motor vehicle 2) while intoxicated; proof of a prior OWI offense merely enhances the crime of OWI from a misdemeanor to a felony. *Finney v. State* (1986), Ind.App., 491 N.E.2d 1029.

Mehidal committed only one offense of OWI. The serious bodily injury resulting from the accident and Mehidal's prior OWI conviction do not multiply the number of crimes committed; rather, they enhance the penalty imposed from a misdemeanor to a felony. I.C. §§ 9–30–5–3 and 4. When two offenses for which the defendant is punished cannot survive the "same elements" test, the double jeopardy bar applies. *Dixon,* —— U.S. at ——, 113 S.Ct. at 2856. Because the elements of Counts I and IV are identical, Mehidal's separate sentences cannot stand. The trial court erred in refusing to vacate either Mehidal's conviction and sentence for OWI Bodily Injury or his conviction and sentence for OWI with a Prior. We remand to the trial court to vacate all but one of Mehidal's convictions and for resentencing.[4]

Judgment affirmed in part, reversed in part, and remanded for resentencing.

SHARPNACK, C.J., and HOFFMAN, JJ., concur.

---

**4.** Mehidal argues his sentence is manifestly unreasonable and should therefore be reversed. Because we remand for resentencing we need not address this issue.