Jean S. BLINN, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 27A05–9601–CR–30.

Court of Appeals of Indiana.

Feb. 18, 1997.

Todd A. Glickfield, Glickfield, Glickfield & Glickfield, Marion, for Appellant–Defendant.

Pamela Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy At-

torney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BARTEAU, Judge

Jean S. Blinn appeals his conviction following a jury trial of operating a vehicle while intoxicated. He raises the following issues:

1. Whether the trial court erred in admitting Blinn's serum alcohol content rather than his blood alcohol content as proof of intoxication?

2. Whether the trial court erred in admitting expert testimony that conflicted with Indiana case law regarding the relationship between serum alcohol content and blood alcohol content?

3. Whether the State presented sufficient evidence to support the conviction?

### FACTS

On November 16, 1994, Audrey Arnold was driving her van southbound down Wabash Avenue in Grant County. She stopped at a red light at the intersection of Wabash Avenue and Jeffras Avenue. As Arnold was waiting at the red light, Blinn drove his truck up to the intersection and rear-ended Arnold's van. Officer Paul Hillsamer was dispatched to the scene of the accident. When Officer Hillsamer arrived, an ambulance was taking both Arnold and Blinn to the hospital. Officer Hillsamer examined the accident

1. Serum is "the fluid portion of the blood obtained after removal of the fibrin clot and blood cells." *Stedman's Concise Medical Dictionary* 921 (James T. McDonough, Jr., Ph.D. ed., 2d ed., 1994).

2. In support of this argument, Blinn cites section 9–30–6–15(a) of the Indiana Code, which provides:

> At any proceeding concerning an offense under IC 9–30–5, evidence of the amount by weight of alcohol that was in the blood of the person charged with the offense:
> (1) at the time of the alleged violation; or
> (2) within the time allowed for testing under section 2 of this chapter;
> as shown by an analysis of the person's breath, blood, urine, or other bodily substance, is admissible.

Ind.Code § 9–30–6–15 (1993). Blinn fails to explain how this statute supports Blinn's argument that the trial court erroneously admitted evi-

scene and determined the owners of the vehicles from their license plates. He then went to the hospital.

While at the hospital, Officer Hillsamer spoke to Blinn about the accident. Blinn admitted that he was driving his truck at the time of the accident. During the conversation, Officer Hillsamer noticed that Blinn was slurring his speech and that his breath had the odor of an alcoholic beverage. Officer Hillsamer then requested that the hospital take a blood sample from Blinn to test for alcohol. The results of the blood test showed that Blinn had a serum alcohol content of 0.292 percent per deciliter.

### SERUM ALCOHOL CONTENT

Blinn argues that the trial court committed reversible error when it admitted evidence of his serum[1] alcohol content rather than his blood alcohol content.[2] He further argues that he was prejudiced by the erroneous admission of his serum alcohol content because it showed an alcohol content that was 18–20% higher than the content that would have been reflected by his whole blood alcohol content.

■ Evidence is generally admissible in a criminal proceeding if it is relevant to an issue being tried. *Smith v. State*, 502 N.E.2d 122, 126 (Ind.Ct.App.1986), *trans. denied* (1987). "Relevancy is the logical tendency of evidence to prove a material fact." *Id.* Evidence that tends to prove a material

dence of Blinn's serum alcohol content rather than his whole blood alcohol content. In fact, the former version of this statute was used to support a holding that evidence on converting serum alcohol content to whole blood alcohol content was admissible because, under the statute, the amount of alcohol in the blood can be determined by analysis of other bodily substances. *Shuman v. State*, 489 N.E.2d 126 (Ind. Ct.App.1986), *trans. denied*. It follows that if evidence of the method for converting serum alcohol content to whole blood alcohol content is admissible, then evidence of the serum alcohol content itself is admissible.

The State interprets Blinn's argument as a challenge of the evidence admitted regarding percentage of alcohol by volume in Blinn's blood instead of the percentage of alcohol by weight. However, Blinn presents no argument on this point and has thus waived any such contention.

fact is admissible even though its tendency to prove the material fact may be slight. *Id.* "[E]ven if the offered evidence is only marginally relevant, it is within the sound discretion of the trial court to determine its admissibility." *Martinez v. State,* 549 N.E.2d 1026, 1029 (Ind.1990).

■ Blinn was charged with operating a vehicle while intoxicated, a violation of Indiana Code section 9–30–5–2, which provides: " A person who operates a vehicle while intoxicated commits a Class A misdemeanor." Intoxicated is defined as:

under the influence of:

(1) alcohol;

(2) a controlled substance (as defined in IC 35–48–1);

(3) a drug other than alcohol or a controlled substance; or

(4) a combination of alcohol, controlled substances, or drugs;

so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties to an extent that endangers a person.

Ind.Code § 9–13–2–86. It was not error to admit evidence of Blinn's serum alcohol content. The evidence was relevant to a determination of whether or not Blinn was under the influence of alcohol at the time he rearended Arnold's van. Although Indiana case law requires serum alcohol content to be converted to whole blood alcohol content in order to be sufficient to support convictions requiring a specific blood alcohol content, it does not require such a conversion in order for the evidence to be relevant. *Mehidal v. State,* 623 N.E.2d 428, 433 (Ind.Ct.App.1993) (citing *Melton v. State,* 597 N.E.2d 359, 361 (Ind.Ct.App.1992), *trans. denied*). *See also Shuman v. State,* 489 N.E.2d at 129–30. Because Blinn's serum alcohol content was relevant to whether not he was under the influence of alcohol, we find no error in its admission.

### *EXPERT TESTIMONY*

■ Blinn next asserts that the trial court committed reversible error by admitting, over objection, expert testimony that conflicted with Indiana case law regarding the conversion of serum alcohol content to whole blood alcohol content. He argues that the expert testimony was not based upon reliable scientific principles and was therefore inadmissible under Indiana Evidence Rule 702, which provides:

### TESTIMONY BY EXPERTS

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

The State's expert testified as follows regarding the relation between serum alcohol content and whole blood alcohol content:

Q: If your [sic] given a serum blood sample[, a]nd your [sic] testing for alcohol on that sample, how is that converted to a whole blood reading?

A: It's not converted. There is no conversion necessary [b]ecause the results are the same.

Q: So the serum blood test for alcohol and whole blood test for alcohol, the results are the same?

A: Right.

. . .

Q: At any rate sir, it is your position if I understand, that there is no difference between serum blood samples and whole blood samples. As it relates to the alcohol content by weight?

A: Yes sir. That's my contingent.

Q: Your [sic] saying they are both the same?

A: Right.

R. 158, 166. Indiana case law has stated the following:

[T]he alcohol content of whole blood is not the same as the alcohol content of either the plasma or serum portion of the blood, if either is separately tested. Stated simply, blood plasma, obtained by centrifuging

the blood, is whole blood minus the cells. Blood serum, on the other hand, is whole blood with the clotting elements removed. E. Fitzgerald & D. Hume, *Intoxication Test Evidence—Criminal and Civil* (1987) § 4:12–14. Plasma or serum samples produce 18% to 20% higher alcohol content values than do whole blood samples. *Id.* § 4:12. A mathematical calculation is necessary to convert the result of a plasma test into a corresponding blood alcohol content result.

*Melton,* 597 N.E.2d at 361. Blinn urges us to hold that expert testimony that conflicts with the above statement from *Melton* is inadmissible. However, the analysis in *Melton* was made in the context of a sufficiency challenge of a conviction for driving with a blood alcohol content of .10 % or greater, not a challenge of expert testimony. The *Melton* court held that there was insufficient evidence to sustain a conviction for driving with a blood alcohol content of .10% or greater by weight because the State did not present any evidence of the defendant's whole blood alcohol content by weight, as is required by the statute. Absent expert testimony concerning the relation between serum test results and whole blood alcohol content, the trier of fact was unable to determine the defendant's blood alcohol content, and therefore had insufficient evidence of guilt.

Blinn's situation is unlike *Melton,* not only because Blinn was not charged with an offense requiring proof of a specific blood alcohol content, but also because the expert at Blinn's trial testified about the relation between serum alcohol content and whole blood alcohol content. However, the expert's testimony conflicted with published authorities. Blinn is not in fact challenging the scientific principles upon which the content of alcohol in his serum was determined, but rather challenges the interpretation of those results as they relate to his whole blood alcohol content.

Upon this issue, the following statement from *Shuman* is instructive:

The basic evidence being admissible pursuant to statute, the differences of opinions presented by the experts as to the validity of the figures resulting from the conver-

sion procedure do not prevent admissibility of the results. The final decision as to the weight to be given the test results is a matter left to the jury after presentation of evidence and cross-examination of experts.

*Shuman,* 489 N.E.2d at 130. Shuman involved a challenge of expert testimony regarding the process of converting serum alcohol test results into the corresponding whole blood alcohol content, arguing that "the conversion process is not sufficiently accurate to be accepted in the scientific community." *Id.* at 129. The court determined that the legislature had intended for such a conversion to be done when it allowed blood alcohol content to be measured from samples of other bodily fluids, and that any conflicts as to how the alcohol content in the measured fluid relates to whole blood alcohol content are to be resolved by the trier of fact after presentation of the evidence and cross-examination of experts.

Blinn was free to cross-examine the State's expert and present his own evidence regarding the conversion process, including requesting that the court take judicial notice of published authorities. We therefore hold that the trial court did not err in admitting the expert testimony regarding the relation between serum blood alcohol content and whole blood alcohol content.

### SUFFICIENCY

■ Blinn was charged with operating a vehicle while intoxicated, which requires evidence that Blinn was driving while under the influence of alcohol "so that there [wa]s an impaired condition of thought and action and the loss of normal control of a person's faculties to an extent that endanger[ed] a person." Ind.Code § 9–13–2–86. "The element of 'endangerment' is proved by evidence showing that 'the defendant's condition or [operating] manner could have endangered any person, including the public, the police, or the [operator]." *Kremer v. State,* 643 N.E.2d 357, 360 (Ind.Ct.App.1994) (quoting *Shaw v. State,* 595 N.E.2d 743, 746 (Ind.Ct.App.1992)). Thus, "proof that the defendant's condition rendered operation of the vehicle unsafe is sufficient to establish endangerment." *Id.*

■ Blinn argues that the evidence is insufficient to support his conviction for driving while intoxicated because the State did not present evidence that Blinn was impaired. Contrary to Blinn's assertion, the State presented ample evidence that Blinn was impaired to an extent that endangered both himself and others. The evidence established that Blinn rear-ended Arnold's van as it was waiting at a red light. Arnold indicated that her neck hurt immediately after the accident, and that Blinn's face was bleeding. Arnold and Blinn were both taken to the hospital as a result of the accident. While Blinn was at the hospital, Officer Hillsamer noticed that Blinn was slurring his speech and that he had the odor of alcohol on his breath. Officer Hillsamer then ordered a blood test, the results of which showed that Blinn had alcohol in his system. This evidence is sufficient from which to conclude that Blinn was under the influence of alcohol so that his driving ability was impaired to the extent that endangered himself and others.

Affirmed.

RUCKER, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

In the case before us there was no evidence by which the alcohol content in the blood serum tested could be converted into a relevant content of alcohol by weight in the whole blood. Despite repeated objections to the evidence without conversion extrapolation in which defense counsel specifically called the attention of the trial court to the applicable case law, *Melton v. State* (1992) Ind.App., 597 N.E.2d 359, the court nevertheless overruled the objection and permitted the testimony to remain before the jury. It is clear that such conversion is essential to an appropriate consideration of alcohol content by weight as evidence of operating a vehicle while intoxicated under I.C. 9–30–6–15.

Here it is unquestioned that the testimony of Mr. Cosby, the State's "expert", was wholly erroneous insofar as he opined that a conversion of test results derived from testing plasma or serum was unnecessary and that there is no difference between testing blood serum for alcohol content by weight and testing whole blood. *Melton, supra,* 597 N.E.2d at 361, as quoted by the majority, clearly demonstrates the total lack of value of Cosby's testimony, including the unfounded conclusion that Blinn's blood alcohol content by weight was 0.292%, with regard to whether Blinn was operating the vehicle while intoxicated. In this regard, there can be little doubt that the blood alcohol evidence was offered by the State to establish prima facie evidence of driving while intoxicated pursuant to I.C. 9–13–2–131 and that the jury may have considered it for that purpose notwithstanding the fact that the jury was not so instructed.

The blood test evidence in this case should have been wholly disregarded insofar is it might be considered as evidence of intoxication. To be sure, the jury was not instructed as requested by the State that BAC evidence of at least .10% is prima facie evidence of intoxication. Certainly, it would have been reversible error to do so. However, absent a positive or negative instruction concerning such seemingly crucial evidence,[3] the presence of that evidence in the case as the jury deliberated guilt or innocence might well have impacted the verdict. At a minimum, the posture of the case and the presence of such evidence could only have been confusing to the jury as to its probative effect.

In my view, the court should either have stricken the evidence or given a negative instruction concerning its consideration. It is the duty of the trial court to assist the jury in carrying out its solemn function to assess the evidence in light of the applicable law. See *Ash v. State* (1983) Ind.App., 455 N.E.2d 965; *Cartwright v. Harris* (1980) Ind.App., 400 N.E.2d 1192; *Wolff v. Slusher* (1974) Ind.App., 161 Ind.App. 182, 314 N.E.2d 758. Here, the jury was forced to make a determination in light of diverting and non-probative

3. Here, there can be little doubt that since Blinn was not charged with operating a motor vehicle with a BAC of more than .10%, the State was clearly attempting to submit the blood test evidence under I.C. 9–13–2–131 to establish "prima facie evidence of intoxication".

"facts" which could only confuse the matter before them for resolution.

In light of this circumstance, I am unable to conclude that the verdict was totally and properly based upon the remaining evidence. That the officer who investigated while Blinn was at the hospital stated that Blinn slurred his speech and had an odor of alcohol is insufficient to dispel my conclusion that, more probably than not, the BAC evidence contributed to the verdict.

I would reverse and remand with instructions to discharge the defendant.