**Robert WARNER, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

**No. 49A02–8603–CR–90.**

Court of Appeals of Indiana, Second District.

Sept. 18, 1986.

David R. Hennessy, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

### STATEMENT OF THE CASE

Defendant-appellant Robert Warner (Warner) appeals his conviction of operating a vehicle while intoxicated,[1] contending the trial court erred by not suppressing evidence in support of his conviction and that, in any event, the evidence is not sufficient to support his conviction.

We reverse.

### FACTS

The evidence most favorable to the trial court's judgment reveals that Donald A. Bender (Bender), an Indianapolis police officer, was on routine patrol on June 22, 1985. Bender was driving a marked Indi-

---

**1.** A class A misdemeanor. Ind.Code 9–11–2–2 (Supp.1984).

anapolis police car and was traveling north on State Street in Indianapolis. As Bender passed the first alley north of Prospect Street, he noticed a pickup truck parked in the alley and two young women proceeding down the street on foot. The young women yelled at Bender and pointed to the pickup truck. They said the man in the truck had attempted to pick them up and was bothering them.

The pickup truck then began to proceed east through the alley. Bender told the women to remain in the area and followed the pickup truck. As he did so, Bender requested a registration check on the truck and observed the manner in which the truck was being operated. The registration check revealed that the truck was registered to Warner. Although Bender followed the truck for approximately seventeen blocks and observed nothing unusual about its operation, he decided to pull the vehicle over to conduct an investigatory stop. Bender turned on his red lights, and Warner immediately pulled to the side of the road. Bender approached the truck, asked for Warner's driver's license, and indicated that he had been stopped for investigation of the complaint by the young women. Warner stated that he had simply been speaking with the women. During this brief conversation, Bender detected an odor of alcohol on Warner's breath. As a result of this observation, Bender asked Warner to step out of the truck and then noticed that Warner's eyes appeared to be bloodshot.

Based on these observations, Bender asked Warner to take a field sobriety test commonly known as the finger-to-nose test. Warner performed this test with good results. Warner also submitted to a Portable Breathalizer Test. Based on the results of the Portable Breathalizer Test, Bender felt that he had probable cause to believe that Warner had been operating his truck under the influence of alcohol. Bender advised Warner of his *Miranda* rights and the

Indiana Implied Consent Law [2] and asked him if he would be willing to take another breath test. Warner agreed. So Bender transported him to the I.U.P.U.I. police station where a BAC Verifier Test was administered. The result of the BAC Verifier Test indicated that Warner had a blood alcohol content (BAC) of .23 percent.

Warner was charged by information with two counts of violating Indiana law. Count one charged Warner with operating a motor vehicle while intoxicated in violation of IC 9–11–2–2, a class A misdemeanor. Count two charged Warner with operating a vehicle with a BAC of greater than .10 percent in violation of IC 9–11–2–1 (Supp. 1984), a class C misdemeanor.

Prior to trial, Warner moved that all evidence obtained subsequent to the investigatory stop be suppressed. The court denied this motion, and the evidence was admitted over Warner's continuing objection. The trial court heard the evidence and found Warner guilty of count one, operating a vehicle while intoxicated, a class A misdemeanor. Upon this finding, the court and the parties engaged in a discussion of the propriety of convicting Warner of both offenses. As a result, the court granted the State's motion to dismiss count two, the charge of operating his vehicle with a BAC of greater than .10 percent, a class C misdemeanor.

## ISSUE

Whether the evidence was sufficient to sustain Warner's conviction of driving while intoxicated? [3]

## DECISION

PARTIES' CONTENTIONS—Warner contends the evidence is insufficient to support his conviction of operating a motor vehicle while intoxicated because the State failed to prove an essential element of the crime, i.e., that he was operating his truck in an impaired condition.

2. Ind.Code 9–11–4–1 to –17 (Supp.1984).

3. Because we find that the evidence was not sufficient to support Warner's conviction, we need not address the constitutional question of whether the evidence presented at trial was the fruit of an illegal stop.

■ Although the State concedes that it must present evidence of impairment to make a prima facie case of driving while intoxicated, it argues that proof of a BAC content of .10 percent or above satisfies this element of proof.

CONCLUSION—Proof of a BAC of .10 percent or above is not sufficient to establish that the driver was intoxicated as that term is defined by Ind.Code 9–11–1–5 (Supp.1984). Therefore, the State failed to prove an essential element of the crime of driving while intoxicated.

Warner was convicted of a violation of IC 9–11–2–2 which states: "A person who operates a vehicle while intoxicated commits a Class A misdemeanor." The Indiana legislature has specifically defined the term "intoxicated." IC 9–11–1–5 provides:

" 'Intoxicated' means under the influence of:

(1) alcohol;

(2) a controlled substance;

(3) any drug other than alcohol or a controlled substance; or

(4) any combination of alcohol, controlled substances, or drugs;

such that there is *an impaired condition* of thought and action and the loss of normal control of a person's faculties to such an extent as to endanger any person." (Emphasis supplied.)

Thus, it clearly appears that proof that the driver was operating his vehicle in an impaired condition is an essential element of the crime of operating a vehicle while intoxicated. Nevertheless, an ambiguity arises as a result of the language of Ind. Code 9–11–1–7 (Supp.1984) which provides: " 'Prima facie evidence of intoxication' includes evidence that at the time of an alleged violation there was ten-hundredths percent (.10%), or more, by weight of alcohol in the person's blood." The ambiguity occurs because the language of IC 9–11–1–7 would seem to eliminate the necessity for the State to present evidence of an impaired condition when it can present evidence of a BAC of .10 percent or above.

We conclude, however, that such a construction of these statutes is untenable for a variety of reasons.

The statutes involved all relate to the same general subject matter. Thus, they are in pari materia and must be read and construed together to arrive at a harmonious result. *Sanders v. State* (1984), Ind., 466 N.E.2d 424; *Isaac v. State* (1982), Ind. App., 439 N.E.2d 1193. Another aid to statutory construction is the rule that we are bound to construe penal statutes strictly and must resolve any ambiguities against the State and in favor of the accused. *Pennington v. State* (1981), Ind., 426 N.E.2d 408; *Gore v. State* (1983), Ind. App., 456 N.E.2d 1030. Thus, the ambiguity created by IC 9–11–1–7 must be resolved in favor of a defendant charged with operating a vehicle while intoxicated because it is inconsistent with the statutory definition of intoxicated to establish guilt merely by proving a BAC of .10 percent or above without evidence of actual impairment. But there are other considerations supporting our conclusion.

In 1983, the legislature repealed Ind. Code 9–4–1–54 (1982), the relevant statute in this area, and enacted a new statutory scheme. *See* 1983 Ind. Acts Pub.L. No. 143–1983. In many respects, the repeal of IC 9–4–1–54 did little to change the law because many of the provisions of the repealed statute were simply reenacted in separate sections of the new law. For example, the classification of driving while intoxicated as a class A misdemeanor was carried over from IC 9–4–1–54(b) and now appears at IC 9–11–2–2; the definition of the term intoxicated currently codified at IC 9–11–1–5 is essentially a reenactment of the definition as it appeared in IC 9–4–1–54(a) (except that the new definition expanded its coverage to include "any drug," in addition to alcohol or controlled substances); and the concept that proof of a BAC of .10 percent or more constitutes prima facie evidence of intoxication was also carried over into IC 9–11–1–7 from IC 9–4–1–54(g)(1). Despite these similarities, the legislature did make one significant change in the law by its creation of an

entirely new per se offense. IC 9–11–2–1 provides: "A person who operates a vehicle with ten-hundredths percent (.10%), or more, by weight of alcohol in his blood commits a Class C misdemeanor." The importance of the enactment of the per se offense lies in its relationship to the driving while intoxicated statute, the statute defining the term "intoxicated," and the prima facie evidence statute. This court has recently held that operating a vehicle while intoxicated and the per se offense of operating a vehicle with a BAC of .10% or above are not the same offense because they require proof of different elements. *Sering v. State* (1986), Ind.App., 488 N.E.2d 369. While the per se offense requires proof only of a specific minimum BAC and does not require proof of impairment, driving while intoxicated, as that term is specifically defined, does require proof of impairment without regard to the driver's BAC. *Id.* In addition, the legislature has classified the per se offense as a class C misdemeanor while driving while intoxicated is classified as a class A misdemeanor. We conclude the legislature must have intended driving while intoxicated and the per se offense to be separate and distinct crimes inasmuch as the crimes were defined differently and received different classifications.

If we were to adopt a construction of these statutes that would permit the State to establish guilt of driving while intoxicated merely by proving that the driver had a BAC of .10 percent or above, any substantive distinction between driving while intoxicated and the per se offense would cease to exist and the per se offense would be rendered meaningless. This is because the very same evidence, proof of a BAC of .10 percent or above, would establish the driver's guilt of both offenses. Such a result would be inconsistent with our conclusion that the two crimes are not the same offense, in that they have been defined to have different elements. Similarly, such a construction would render meaningless the statutory definition of the term "intoxicated" because the State could avoid the necessity of proving impairment, an essential element of the definition, merely by proving the driver had a BAC of .10 percent or above. We cannot presume that the legislature intended the per se offense *and* the definition of "intoxicated" to be meaningless enactments and will not adopt a construction that would cause such a result. *See Northern Ind. Bank and Trust Co. v. State Bd. of Fin. of Ind.* (1983), Ind.App., 457 N.E.2d 527; *Sharton v. Slack* (1982), Ind.App., 433 N.E.2d 856, *trans. denied.* Instead, we must resolve any existing ambiguities in favor of the accused by strictly construing the statutes against the State. *Pennington, supra; Gore, supra.* Therefore, we repeat our conclusion that when a defendant is charged with driving while intoxicated, IC 9–11–1–7 does not apply to allow the State to make its case merely by demonstrating that the defendant was driving with a BAC of .10 percent or above.[4] Rather, as an essential element of the crime, the State must demonstrate that the driver was intoxicated, i.e., that he was under the influence of alcohol "such that there [was] an impaired condition of thought and action and the loss of normal control of [the driver's] faculties to such an extent as to endanger any person." IC 9–11–1–5.

■ Applying our conclusion to the facts of this case, it is apparent that the evidence was insufficient to support Warner's conviction of driving while intoxicated. Bend-

---

4. Ironically, this same conclusion was reached by the majority in *Sering, supra,* but by an entirely different route. Judge Shields wrote in *Sering* that "because the phrase 'prima facie evidence of intoxication,' defined within I.C. 9–11–1–7, is enclosed in quotation marks[,]" that section could apply "to only those statutes which contain the phrase as, for example, Ind. Code Ann. 9–11–4–3 (Burns Supp.1985)." *Sering, supra,* at 373 n. 8. Because I.C. 9–11–2–2 does not include this phrase, it was concluded that I.C. 9–11–1–7 could simply not apply to supply proof that the defendant was driving while intoxicated. *See id.*

Thus, *Sering* provides not only a different rationale for our decision in this case, but also demonstrates that our construction of these statutes does not render I.C. 9–11–1–7 meaningless, as it retains application to at least one other statute.

er testified that he followed Warner for approximately seventeen blocks, but observed nothing that would indicate that Warner's driving was impaired. Moreover, Warner was required to perform a finger-to-nose, field sobriety test and did so with "good results." *Record* at 130. There was no evidence that Warner's speech was slurred or that his thought processes were impaired in any way. Consequently, there was a complete failure of proof on an essential element of the crime of driving while intoxicated. This failure is fatal to the State's case because the State must present substantial evidence of probative value on each element of the crime charged. *Woods v. State* (1980), 274 Ind. 624, 413 N.E.2d 572.

Judgment reversed.

SULLIVAN and SHIELDS, JJ., concur.