## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 19 2015, 9:37 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert P. Stoppenhagen,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 19, 2015

Court of Appeals Case No. 76A04-1408-CR-374

Appeal from the Steuben Superior Court

The Honorable William C. Fee, Judge

Cause No. 76D01-1202-FD-125

**Brown, Judge.**

[1] Robert P. Stoppenhagen appeals his conviction for operating a vehicle while intoxicated as a class D felony. Stoppenhagen raises two issues which we consolidate and restate as whether the evidence is sufficient to support Stoppenhagen's conviction. We affirm.

## Facts and Procedural History

[2] In the early morning hours of January 21, 2012, Steuben County Sheriff's Deputy Rex Snider was on patrol in a fully marked patrol vehicle and was traveling westbound on Baker Road approaching Old 27 in Steuben County. At approximately 2:40 a.m., Deputy Snider observed some headlights and a vehicle sitting at Lane 140 on Lake George. Deputy Snider pulled up to a stop sign and decided to go north to check to make sure that the vehicle was not in distress. Deputy Snider passed the vehicle and observed the driver's door open, the interior lights illuminated, and Stoppenhagen standing next to the vehicle urinating. Deputy Snider pulled up a bit farther so that he could turn around and make contact with Stoppenhagen.

[3] When Stoppenhagen saw Deputy Snider, he quickly entered his vehicle and attempted to leave by driving his vehicle southbound on Old 27. Deputy Snider activated his emergency lights, and Stoppenhagen stopped his vehicle. Deputy Snider asked Stoppenhagen why he was urinating outdoors, and he said that he had just left his girlfriend's house. Deputy Snider asked why he did not "go there," and Stoppenhagen said "[j]ust because it's cold." Transcript at 78.

[4] Deputy Snider observed that Stoppenhagen's speech was slow and slurred, that his eyes were red and watery, and that an odor of an alcoholic beverage was coming from inside the vehicle. Deputy Snider asked Stoppenhagen if he had been consuming alcohol, and Stoppenhagen stated that he had a drink approximately an hour earlier. Deputy Snider asked Stoppenhagen for his license and registration. Stoppenhagen pulled his wallet out and fumbled with opening it, and Deputy Snider observed that Stoppenhagen's manual dexterity was poor as he attempted to retrieve his license from his wallet.

[5] Deputy Snider asked Stoppenhagen to exit his vehicle, and as he exited the vehicle, Deputy Snider observed a fairly large wet spot in Stoppenhagen's groin area. Deputy Snider did not perform field sobriety tests because the road was snow and ice covered.

[6] Typically, Deputy Snider would just have had Stoppenhagen's vehicle towed, but Stoppenhagen requested that his vehicle not be towed, and Deputy Snider allowed him to contact his girlfriend to remove the vehicle. Deputy Michael Kugler responded to the scene to assist Deputy Snider. The deputies obtained Stoppenhagen's consent to move his vehicle because it was partially in the roadway. Deputy Kugler moved Stoppenhagen's vehicle and observed "an open half . . . bottle of . . . harder alcohol" and a bottle of mouthwash between the seats. *Id.* at 102.

[7] Deputy Snider transported Stoppenhagen to the Steuben County Jail for testing. At the jail, he offered Stoppenhagen the opportunity to submit to standard field

sobriety tests, but Stoppenhagen did not agree to take the tests and said that "he had double vision and also both of his knees were bad and . . . he couldn't walk a straight line even if he was sober." *Id.* at 81. Deputy Snider offered Stoppenhagen the opportunity to submit to a chemical breath test, and he agreed to take the test. Stoppenhagen had "issues with getting a good breath and he started and stopped . . . several times," and the first test came back invalid. *Id.* at 86. Deputy Snider performed a second test, and the test indicated .08.

[8]     On February 2, 2012, the State charged Stoppenhagen with Count I, operating a vehicle while intoxicated as a class C misdemeanor; Count IA, operating a vehicle while intoxicated – second/subsequent offense as a class D felony; Count II, operating a vehicle with at least .08 gram alcohol content as a class C misdemeanor; and Count IIA, operating a vehicle with an ACE of .08 or more-second/subsequent offense as a class D felony.

[9]     On March 6, 2014, the court held a jury trial on Counts I and II and Stoppenhagen was found guilty as charged. After a second phase of the trial on Counts IA and IIA, the jury found Stoppenhagen guilty of those counts. After reading the verdicts, the court stated: "The Court would then recognize and accept those verdicts and find as a matter of law that they do merge and are consolidated under one count A of the Information, a Class D Felony. Judgment of Conviction is entered." *Id.* at 150. The court merged the counts into Count IA, entered judgment of conviction on that count, and ultimately sentenced Stoppenhagen to two years in the Department of Correction.

## Discussion

The issue is whether the evidence is sufficient to support Stoppenhagen's conviction for operating a vehicle while intoxicated as a class D felony.[1] When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable

---

[1] Stoppenhagen also argues that the evidence was insufficient to sustain his conviction for operating a vehicle with at least .08 grams of alcohol content. The record reveals that the court entered judgment of conviction on the charge of operating while intoxicated as a class D felony and merged the other counts. In addition to the court's statement at trial that the court recognized the verdicts and found as a matter of law that they merged and were consolidated under Count IA, the March 6, 2014 order titled "Judgment of Conviction (Jury Trial)" states: "Counts are now merged into Count IA as a matter of law." Appellant's Appendix at 78. The order also states: "Having accepted and filed said verdict, it is now ordered and adjudged by the court that defendant, Robert Paul Stoppenhagen who is a male person, 72 years of age, is guilty of the crime of Operating While Intoxicated/Prior, a Class D Felony as charged in the Information." *Id.* The document titled "Judgment of Conviction, Sentence and Commitment Order Upon Guilty Verdict by Jury" dated July 14, 2014 states:

> Findings are entered that the jury of this cause delivered in open court the following guilty verdict, to wit: OPERATING WHILE INTOXICATED, a CLASS D FELONY on as charged in the Information. Having accepted and filed said verdict, IT IS ORDERED THAT A JUDGMENT OF CONVICTION for the above stated offense is entered and defendant is sentenced on the following terms . . . .

*Id.* at 88. Because the trial court merged the other counts and only one judgment was entered, we need not address his claim with respect to the charge of operating while intoxicated with at least .08 grams of alcohol content. *See Carter v. State*, 750 N.E.2d 778, 781 (Ind. 2001) (holding that "a jury verdict on which the court did not enter judgment for one reason or another (merger, double jeopardy, etc.) is unproblematic"); *Fry v. State*, 748 N.E.2d 369, 373 n.2 (Ind. 2001) ("Because the trial court merged the robbery conviction into the conspiracy to commit robbery conviction, here we do not separately address the sufficiency of the evidence with regard to the robbery conviction."); *Mann v. State*, 754 N.E.2d 544, 550 n.6 (Ind. Ct. App. 2001) (noting that the defendant argued that the trial court abused its discretion in allowing the State to amend the charging information and in instructing the jury with respect to the other counts charged and holding that we need not address these claims because the trial court merged those counts and only one judgment was entered), *trans. denied*.

trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.* A conviction may be based upon circumstantial evidence alone. *Fought v. State*, 898 N.E.2d 447, 450 (Ind. Ct. App. 2008). Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

[11] The offense of operating a vehicle while intoxicated is governed by Ind. Code § 9-30-5-2, which provides that "a person who operates a vehicle while intoxicated commits a Class C misdemeanor." At the time of the offense, Ind. Code § 9-30-5-3[2] provided that a person who violates Ind. Code § 9-30-5-2 commits a class D felony if the person has a prior conviction of operating while intoxicated that occurred within five years immediately preceding the occurrence of the violation of Ind. Code § 9-30-5-2. Thus, to convict Stoppenhagen of operating a vehicle while intoxicated as a class D felony, the State needed to prove that he operated a vehicle while intoxicated and that he had a prior conviction of operating while intoxicated within five years.

[12] Stoppenhagen does not argue that his offense did not qualify as a class D felony. Rather, he contends that the evidence was insufficient to demonstrate that he: (A) operated the vehicle; and (B) was intoxicated.

---

[2] Subsequently amended by Pub. L. No. 158-2013, § 159 (eff. July 1, 2014).

A. *Operating the Vehicle*

[13] Stoppenhagen argues that the State failed to prove that he was "operating" a vehicle and asserts that the State presented no evidence that the car was running when the deputy first approached the scene or that the engine was running when Deputy Snider approached the vehicle and asked for his license and registration. Appellant's Brief at 11. The State argues that there was clear evidence in the record that Stoppenhagen operated the vehicle.

[14] The record reveals that Deputy Snider observed Stoppenhagen standing next to his vehicle at Lane 140 on Lake George urinating with the driver's door open and the interior lights illuminated at approximately 2:40 a.m. The following exchange occurred during direct examination of Deputy Snider:

> Q Okay and ultimately did you make contact with [Stoppenhagen]?
>
> A Yes, actually Mr. Stoppenhagen, when he saw me, he quickly got back into his vehicle and attempted to leave. And that's when I, so I turned around and came back in my vehicle and then activated emergency lighting.
>
> Q Okay, so as he sees you, he hopped in his vehicle and began driving?
>
> A Yes.

[15] Transcript at 76-77. Stoppenhagen also told Deputy Snider that he had "just left his girlfriend's house." *Id.* at 78. Based upon the record, we conclude that

the State presented evidence of a probative nature from which a reasonable jury could have found that Stoppenhagen operated his vehicle.[3]

B. *Intoxication*

[16] Stoppenhagen argues that the State failed to prove an essential element of the crime, i.e., that he was operating his vehicle in an impaired condition. Stoppenhagen relies upon *Warner v. State*, 497 N.E.2d 259 (Ind. Ct. App. 1986). He asserts that the jury was instructed pursuant to Ind. Code § 9-13-2-131 that *prima facie* evidence of intoxication includes evidence that at the time of an alleged violation there was at least eight-hundredths (.08) of a gram of alcohol in two hundred ten (210) liters of a person's breath, but "based upon the holding in [*Warner*], proof of BAC of .08 or above is not sufficient to establish that the driver was intoxicated as that term is defined by I.C. § 9-30-5-2(a)." Appellant's Brief at 15. The State argues that the record is replete with evidence of Stoppenhagen's intoxication and points to his urinating in the road, excuse for urinating in the road, the wet spot on his pants, his slow and slurred speech, his bloodshot and watery eyes, and his poor manual dexterity.

[17] At the time of the offense, Ind. Code § 9-13-2-86 provided that "[i]ntoxicated means under the influence of . . . alcohol . . . so that there is an impaired

---

[3] Stoppenhagen cites *Mordacq v. State*, 585 N.E.2d 22 (Ind. Ct. App. 1992); and *Hiegel v. State*, 538 N.E.2d 265 (Ind. Ct. App. 1989), *trans. denied*. Those cases did not include testimony from the police officer indicating that he actually observed the defendant drive the vehicle as in this case. Thus, we do not find *Mordacq* or *Hiegel* instructive.

condition of thought and action and the loss of normal control of a person's faculties."[4]  "The State need not present separate proof of impairment of action, impairment of thought, and loss of control of faculties to establish an individual's intoxication."  *Woodson v. State*, 966 N.E.2d 135, 142 (Ind. Ct. App. 2012), *trans. denied*.  Rather, a person's impairment is to be determined by considering his capability as a whole, not component by component, such that impairment of any of these three abilities equals impairment.  *Id.*  Such impairment can be established by evidence of: (1) the consumption of a significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech.  *Id.* (citing *Fought*, 898 N.E.2d at 451).  Ind. Code § 9-13-2-131 provides: "'Prima facie evidence of intoxication' includes evidence that at the time of an alleged violation the person had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per: (1) one hundred (100) milliliters of the person's blood; or (2) two hundred ten (210) liters of the person's breath."

[18]  In *Warner*, a police officer was informed by two women that Robert Warner, the driver of a pickup truck, attempted to pick them up and was bothering them. 497 N.E.2d at 260.  The officer followed the truck for approximately seventeen blocks and observed nothing unusual about its operation and decided to pull the

---

[4] Subsequently amended by Pub. L. No. 196-2013, § 3 (eff. May 7, 2013).

truck over to conduct an investigatory stop. *Id.* During a brief conversation, the officer detected an odor of alcohol on Warner's breath and that his eyes appeared to be bloodshot. *Id.* Warner completed a field sobriety test with good results. *Id.* The officer conducted a portable breathalyzer test and later obtained a BAC Verifier Test which indicated that Warner had a blood alcohol content of .23 percent. *Id.* Warner was convicted of operating a vehicle while intoxicated as a class A misdemeanor. *Id.*

[19] On appeal, the court concluded that when a defendant is charged with driving while intoxicated, Ind. Code § 9-11-1-7 (Supp. 1984), which provided that *prima facie* evidence of intoxication includes evidence that at the time of an alleged violation there was ten-hundredths percent or more by weight of alcohol in the person's blood, did not apply to allow the State to make its case merely by demonstrating that the defendant had a BAC of .10 percent or above. *Id.* at 262. The court also held that as an essential element of the crime, the State must demonstrate that the driver was intoxicated, i.e., that he was under the influence of alcohol such that there was an impaired condition of thought and action and the loss of normal control of the driver's faculties to such an extent as to endanger any person.[5] *Id.* The court ultimately found that the State failed to present sufficient evidence of Warner's intoxication and observed that Warner drove seventeen blocks without the officer observing anything

---

[5] The requirement that the impaired condition endanger a person was removed after 2001. *See* Ind. Code § 9-13-2-86 (Supp. 2001); *Tin Thang v. State*, 10 N.E.3d 1256, 1262 (Ind. 2014).

indicating Warner's driving was impaired, Warner completed a field sobriety test, and there was no evidence that his speech was slurred or that his thought process was impaired in any way. *Id.* at 263.

[20] We note that two other panels from this court disagreed with the analysis in *Warner*. *See Boyd v. State*, 519 N.E.2d 182, 184 n.4 (Ind. Ct. App. 1988) (disagreeing with the holding in *Warner*); *Clark v. State*, 512 N.E.2d 223, 227 n.1 (Ind. Ct. App. 1987) (disagreeing with the holding in *Warner*).[6] In *Mullins v. State*, 646 N.E.2d 40, 48 (Ind. 1995), the Indiana Supreme Court addressed what was required of the prosecution and the defense when the prosecution offers breath-test results for admission as evidence and held that "[c]learly, evidence showing that a defendant's blood-alcohol level was 0.10 percent by weight or greater is relevant to a prosecution under either § 9-30-5-1 or § 9-30-5-2." The court noted:

> Breath-test results in a prosecution for operating a vehicle while intoxicated under § 9-30-5-2 are also obviously relevant, but are especially relevant in light of § 9-13-2-131 (Burns 1991), which provides: "'Prima facie evidence of intoxication' includes evidence that at the time of an alleged violation there was at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood." *But see Warner v. State* (1986), Ind. App., 497 N.E.2d 259 (in order to sustain a conviction under § 9-11-2-2, the predecessor statute to § 9-30-5-2, in addition to proof of a blood-alcohol level of 0.10 percent or greater, the State must also offer evidence of actual

---

[6] In *Clark*, Judge Shields authored a concurring opinion and stated that she was in complete agreement with the holding of *Warner*. 512 N.E.2d at 228.

impairment), questioned by *Clark v. State* (1987), Ind. App., 512 N.E.2d 223, 228 n.1.

*Id.* at 48 n.9.

[21] Even assuming that *Warner* applies and the State cannot demonstrate intoxication merely by showing that Stoppenhagen had a blood alcohol content equal to or greater than .08, we cannot say that reversal is warranted. Deputy Snider testified that Stoppenhagen's speech was slow and slurred, his eyes were red and watery, and he observed an odor of an alcoholic beverage coming from inside the vehicle. Deputy Snider also observed that Stoppenhagen's manual dexterity was poor as he attempted to retrieve his license from his wallet. Stoppenhagen urinated by his vehicle and had a fairly large wet spot on his pants in his groin area. He told Deputy Snider that he had a drink approximately an hour earlier, and Deputy Kugler observed an open bottle of alcohol in Stoppenhagen's vehicle. Further, Deputy Snider testified that he received training in relation to the investigation of intoxicated individuals, had encountered hundreds of intoxicated individuals, and believed that Stoppenhagen was intoxicated.

[22] Based upon the record, we conclude that evidence of probative value exists from which the jury could have found Stoppenhagen was intoxicated and guilty beyond a reasonable doubt of operating a vehicle while intoxicated as a class D felony.

## *Conclusion*

[23] For the foregoing reasons, we affirm Stoppenhagen's conviction for operating a vehicle while intoxicated as a class D felony.

[24] Affirmed.

Bailey, J., and Robb, J., concur.